UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Crim. No. 17-374 (RMB) |
| | : | **OPINION** |
| BRETT COOPER, | : | |
| Defendant | : | |

This matter comes before the Court upon Defendant Brett Cooper's Motion to Withdraw his Plea of Guilty, made on June 16, 2019, pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B).

The Court has considered the written submissions of the parties, as well as the testimony of the Defendant and his former counsel, Assistant Federal Public Defender Christopher O'Malley. For the reasons set forth herein, Defendant's motion is DENIED.

**Defendant's Motion to Withdraw Plea**

In essence, Defendant Cooper makes two arguments as to why he should be permitted to withdraw his plea. First, he alleges that his former attorney, Assistant Federal Public Defender Christopher O'Malley, told him that "he thought there was a good chance if [he] took the plea [he] could avoid incarceration."

Crim. Docket No. 20-1.[1]  Second, Defendant Cooper contends that, at the time he entered his plea, he was not aware that this Court "had already decided that [Cooper] was guilty of an extensive fraud far beyond what [he] was pleading guilty to. Had [he] known of the conclusions already reached by the Court, [he] would not have plead guilty." Id.  (As discussed infra, on November 5, 2015, in the case SEC v. Cooper, Civ. No. 13-5781 (D.N.J.), this Court granted summary judgment in favor of the Plaintiff, the Securities and Exchange Commission ("SEC"), and against Defendant Cooper.)

**<u>Legal Standard for Withdrawal of Guilty Plea</u>**

In relevant part, Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  A defendant bears a "substantial burden of showing a fair and just reason" for withdrawal of his guilty plea. United States v. Siddons, 660 F.3d 699, 703 (3d Cir. 2011) (internal citations and quotation marks omitted).

"[A] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a

---

[1] "Crim. Docket No." refers to the docket entries in this matter.

2

defendant who has already acknowledged his guilt by pleading guilty." Siddons, 660 F.3d at 703. In assessing whether Cooper has carried his "substantial" burden, the Court "must consider whether: (1) [he] asserts his innocence; (2) [he] proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal." Id. (internal citations and quotation marks omitted). Furthermore, "[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense," and the Defendant "must also give sufficient reasons to explain why contradictory positions were taken before the district court." Id. (internal citations and quotation marks omitted).

**Background to the Entry of the Guilty Plea**

Before the Court reviews its analysis of Defendant Cooper's basis for moving to withdraw his guilty plea, a brief background of the procedural history is warranted. On September 27, 2013, the SEC filed a Complaint which was assigned to this Court. In the Complaint, the SEC alleged that Defendants Cooper, REOP Group Inc. ("REOP"), and four of Defendant Cooper's companies – Dream Holdings, LLC, Fortitude Investing, LLC, Global Funding Systems LLC, and Peninsula Waterfront Development, LP (hereinafter the "Cooper Companies") – had employed fraudulent schemes and deceptive acts, and had made untrue statements of material fact or omitted material facts, in connection with the

purchase or sale of securities, in violation of 15 U.S.C. §§ 77q(a) and 78j(b) and 17 C.F.R. § 240.10b-5. See Civ. Docket No. 1 (Sept. 27, 2013).[2] The Complaint further alleged that Defendant Cooper aided and abetted these companies in their violation of those statutes, see id. at ¶¶ 27-37, and that Defendant Cooper induced, or attempted to induce, the purchase or sale of a security without being registered by the SEC as a broker or a dealer in violation of 15 U.S.C. § 78o(a), see id. at ¶¶ 38-40.

On December 19, 2014, the SEC filed a motion for summary judgment against all defendants or, in the alternative, for summary judgment against Defendant Cooper and default judgment against the four Cooper Companies and REOP. See Civ. Docket No. 37, (Dec. 19, 2014).

On November 5, 2015, this Court granted summary judgment in favor of the SEC and against Defendant Cooper, as well as default judgment as to REOP and the Cooper Companies. See Civ. Docket No. 51 (Nov. 5, 2015). In the Opinion [Civ. Docket No. 50] accompanying the Order, this Court held that the undisputed evidence put forward by the SEC demonstrated that Defendant Cooper had carried out a variety of financial schemes, including: a classic prime bank transactions scheme, see Civ.

---

[2] "Civ. Docket No." refers to the docket entries in the related civil case referenced supra (13-cv-5781).

4

Docket No. 50, at 4; a fraudulent escrow account information scheme, see id. at 5; and a Brazilian bond fee scheme, see id. at 7. The evidence demonstrating Defendant Cooper's criminal activity included a report from the SEC's expert witness, Professor James E. Byrne. See id. at 9.

Notably, Defendant Cooper provided no evidence to rebut the SEC's Motion for Summary Judgment, other than general denials and a brief memorandum contesting that he was individually liable for the actions of the Cooper Companies. See id. at 14; see also Civ. Docket No. 43.[3] Moreover, Defendant Cooper pleaded the Fifth Amendment both at his deposition and in response to the SEC's discovery requests. As an exercise of caution, and prior to the Court's summary judgment ruling, this Court advised Defendant Cooper that adverse inferences could be drawn against him in the context of a civil case when a party invokes the Fifth Amendment. See Civ. Docket No. 46; see also Civ. Docket No. 50, at 13.[4]

---

[3] Defendant Cooper's opposition also included a letter to this Court asking that his late submission be accepted. See Civ. Docket No. 43-1.

[4] As a further exercise of caution, the Court held that "[i]n light of the fact that Defendant Cooper is appearing pro se, he may be unaware that he may not prevent the finding of judgment against him solely by invoking his Fifth Amendment privilege. Accordingly, this Court will permit the parties an opportunity to file supplemental briefs to address [the issue]." Civ. Docket No. 46, at 8. And further still, this Court directed the SEC to re-serve Defendant Cooper with all exhibits and

5

On November 5, 2015, this Court held that "no genuine issue of material fact exist[ed] concerning whether Defendants violated the statutes and rules as alleged by taking investors' money for their personal benefit using material misrepresentations and omissions, and by engaging in deceptive acts, practices and transactions without even attempting to use the money in any way likely to realize any return." See Civ. Docket No. 50, at 13.

The SEC also sought "third tier" civil penalties against all defendants, including Defendant Cooper. See id. at 33-34. Generally, such penalties set the ceiling for penalty amounts and are available when the securities law violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement [and] such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons." Section 21(d)(3)(B) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(B); see also Graulich, 2013 WL 3146862, at *7. The maximum third tier penalty is the greater of (1) $150,000 per violation for a

---

affidavits upon which it relied in its motion for summary judgment because Defendant Cooper had made a statement that he had "not been provided [with] any information or documentation on any of these . . . matters." Id. at 12. The SEC served Defendant Cooper with this Court's Memorandum Order and all such exhibits and affidavits by mailing them to his address on record as well as e-mailing them to him at his e-mail address on record. See Civ. Docket No. 47.

natural person or $725,000 per violation for any other person
(e.g., corporate entity) or (2) the "gross amount of pecuniary
gain" to the defendant as a result of the securities law
violation. See id.

Based upon the record presented, this Court ruled that
"Defendants' securities violations were egregious, repeated, and
carried a high degree of scienter. Cooper violated the law
repeatedly over a period of at least four years, using investor
funds for his personal use. He had no gainful employment during
this period and there is no evidence that the other Defendants
had any business operations or earned any legitimate income.
Cooper does not admit the wrongful nature of his conduct. He
gives no assurance against future violations and, in fact,
continues to hold himself out as a successful businessman." Civ.
Docket No. 50, at 35.

Consequently, the Court awarded summary judgment against
Cooper and his companies. See Civ. Docket No. 51. Specifically,
the Court ordered Defendant Cooper and the Cooper Companies
jointly and severally liable for disgorgement of $2,096,160,
representing profits gained as a result of the conduct alleged
in the Complaint, together with prejudgment interest in the
amount of $297,463, for a total of $2,393,623 as a penalty
payment; and the Court ordered Defendant Cooper and REPO jointly
and severally liable for disgorgement of $50,000, representing

7

profits gained as a result of the conduct alleged in the complaint, together with prejudgment interest in the amount of $4,016, for a total of $54,016 as a penalty payment. See Civ. Docket No. 51, at VI.

**Analysis of Defendant's Reasons**

Initially, as noted above, Defendant Cooper's stated reason for moving for withdrawal of his guilty plea was his belief that this Court had preemptively found him guilty of an extensive fraud beyond the money laundering charge to which he had pled guilty; had he known that this Court had made such findings in his related civil case, he argued, he would not have pled guilty. He also claimed that he was advised by his counsel, Mr. O'Malley, that there was a good chance that he would not go to jail.

In support of his Motion, Defendant testified at a hearing held on November 13, 2019.[5] At that hearing, Defendant Cooper added another reason: that he did not understand the crime of money laundering to which he had pled guilty.

Defendant Cooper testified that he knew summary judgment had been granted against him in the SEC civil action. See November 13, 2019, Transcript ("11/13/19 Tr."), at 9. He

---

[5] The Court raised the question of whether Defendant's reason should be subject to cross-examination by the Government. Defendant agreed.

further testified that he was aware at the commencement of his representation in the within matter by Assistant Federal Public Defender Christopher O'Malley that this Court was the same judge who had heard his civil case. See id. at 10.  Defendant Cooper testified, however, 1) that he had never read this Court's summary judgment Opinion, 2) that he was unaware that this Court had imposed a Tier 3 penalty, and 3) that, had he known that fact, he never would have agreed to have this Court hear his criminal case. See id. at 11-12.

On cross-examination, Defendant Cooper testified generally to the following.  He denied liability in the related civil action, and he denied that he had the requisite "intent to defraud" in this criminal action.  The following relevant portions of his testimony follow:

> Mr. Askin: Are you saying today that when you entered the guilty plea in July before this Court that you didn't understand the charge against you?
>
> Defendant Cooper: I did not understand that it had an element of fraud.

Id., at 17.

> Mr. Askin: When you pled guilty to money laundering what was your understanding back in July when you pled guilty as to why that was a crime, why the wire transfer of that money that you transferred was a crime?  What was your understanding of why that was a crime?
>
> Defendant Cooper: I didn't, I was just told that that's what I had to do.  I had to sign that because that was the plea deal.  There was no explanation, it was just this was the plea deal, this is what, you

9

know, you guys agreed to and that's what I had to
sign.

The Court: You were told by Mr. O'Malley you had to
sign the plea agreement?

Defendant Cooper: If I wanted the agreement that they
had worked out, yes.

11/13/19 Tr., at 18-19.

Mr. Askin: So, let me ask you this, Mr. Cooper. You
are saying you pled guilty not understanding the
charge solely because Mr. O'Malley told you to. Is
that what you [are] saying?

Defendant Cooper: He said this is what you guys agreed
on.

Id., at 20.

At times, the Defendant himself admitted that he had lied,

or may have lied, to the Court. The following exchanges

illustrate this point:

The Court: Excuse me one second. All the answers to
our questions that you gave me at the plea colloquy,
were they truthful?
Defendant Cooper: I don't know what all the answers
were to be able to answer that.

Id., at 25.

The Court: To be clear in my question, my question is
are there any answers that you gave me that were not
truthful?

Defendant Cooper: I understand the question, your
Honor.

11/13/19 Tr., at 26.

The Court: (reviewing prior questions asked of the
Defendant at his colloquy). Did you knowingly and
intentionally make material misrepresentations or
false statements to Mr. Strohm in order to obtain his
alleged investment of $140,000 on October 1, 2020?

10

>    Your answer was: yes, your Honor. Was that a truthful
>    statement?
>
>    Defendant Cooper: No.
>
>    The Court: Did you then knowingly and intentionally
>    transfer the funds you received from Mr. Strohm to two
>    different bank accounts that you controlled as we just
>    discussed above so that you could have access to these
>    funds and with the intention of using the money for
>    your own personal expenses? And your answer was: Yes,
>    your Honor. Was that [a] truthful statement?
>
>    Defendant Cooper: No.
>
>    The Court: And do you acknowledge that these wire
>    transfers were conducted in and affected interstate
>    commerce? And your answer was: Yes, your Honor. Was
>    that a truthful statement?
>
>    Defendant Cooper: No, I don't understand what that
>    even means.
>
>    The Court: Did you receive the investment funds from
>    Mr. Strohm into the Peninsula Waterfront Development
>    account and then make a subsequent two wire transfers
>    to the Dream Holdings account and your own personal
>    bank account knowing that you were not investing the
>    money for the investor as discussed with Mr. Strohm?
>    Your answer was: Yes, your Honor. Was that a truthful
>    statement?
>
>    Defendant Cooper: No.
>
>    The Court: Do you acknowledge that the conduct was
>    intentional and in violation of the money laundering
>    statute, Section 1957 of Title 18? And your answer:
>    Yes, your Honor. Was that a truthful statement?
>
>    Defendant Cooper: No. I don't even know what that
>    statute is.
>
>    The Court: And that the underlying crime that was
>    committed was wire fraud? And your answer: Yes, your
>    Honor. And that was not truthful either.

11/13/19 Tr., at 26, 30-32.

Defendant Cooper also testified that the offense of money laundering had never been explained to him.

> The Court: Can we break the question down, please? Your testimony is that Mr. O'Malley never explained money laundering to you. Is that your testimony?
> Defendant Cooper: Yes, your Honor.
>
> The Court: Your testimony is that you never defrauded anyone involved in this case. Is that your testimony?
>
> Defendant Cooper: Yes, your Honor.

Id., at 36.

When pressed by the Assistant United States Attorney, Defendant Cooper testified that he previously had given false statements under oath.

> Mr. Askin: Your testimony in response to the Court's questions, the Court went over the plea questions with you, factual basis questions for the plea, and for some of them where you told the Court "yes" at the plea hearing you said yeah, that was true, for others where you admitted that you defrauded people you are saying today that these questions were not true, the answers to those questions that you gave under oath at the plea hearing were not true, is that correct?
>
> Defendant Cooper: Correct.
>
> Mr. Askin: You are saying that you perjured yourself, you intentionally lied to the Court at the plea hearing?
>
> Defendant Cooper: I didn't intentionally, I just didn't understand what was going on. I was told I had to do it. I mean, I have multiple messages and things with my attorney that I didn't agree with what was going on.

11/13/19 Tr., at 36-37.

Defendant Cooper's November 2019 testimony painted not only a picture of a client kept in the dark by his attorney but an

12

unsophisticated individual who did not understand the crime to which he had pled guilty. In stark contrast, Mr. O'Malley testified in January 2020 that Defendant Cooper had been very involved with the plea negotiations that took place and, moreover, "was pleased with the end result." January 27, 2020 Transcript, ("1/27/20 Tr."), at 12. Mr. O'Malley further testified at length about his efforts to work with the Government to craft a plea deal that would not involve a custodial term for Defendant Cooper:

> Mr. Askin: Okay. It appears in the e-mail you are asking me [the AUSA] to agree to a five-year probationary sentence and allow Mr. Cooper to remain out; is that correct?
>
> Mr. O'Malley: These were – this overture to you was because Mr. Cooper and I had many communications and Mr. Cooper was trying to find other ways than doing custody, which I believe was going to be inevitable in his case, but he was trying to between new and creative ways to pitch that he felt, and with some merit, that he was better off working and paying his child support, supporting his family and paying back the victims in his case, in the underlying case.
>
> Mr. Askin: Right.
>
> Mr. O'Malley: And I made the pitch to you saying would you consider this. Right? So I thought – and on behalf of Mr. Cooper. Then I said look, I'll run it up the proverbial flagpole, I will send it to you and we'll get your response.
>
> Mr. Askin: And then on page four, the bottom of page four, and the top of page five is my response in writing to you about that, correct?
>
> Mr. O'Malley: That's correct.

> Mr. Askin: And essentially where I tell you we'll
> consider payments of restitution but not agreeing to
> agree to certain things that you were asking; is that
> correct?
>
> Mr. O'Malley: That's correct. I found your letter
> effective, courteous but nonetheless did not accede to
> what I was pitching to you on behalf of Mr. Cooper.

1/27/20 Tr., at 15-16.

Mr. O'Malley summarized Defendant Cooper's level of engagement in plea negotiations in his testimony that "Mr. Cooper was in the loop on all these issues [relating to the plea deal]." Id., at 17.

Defendant Cooper signed the plea agreement on May 26, 2017, but Mr. O'Malley did not forward it to the Government until July 2017. Mr. O'Malley explained why:

> Mr. O'Malley: Mr. Cooper always wanted two things, he
> – and I didn't send it until some time in July when
> all I thought at the time, mitigating and litigating
> and trying to get him in the post posture possible
> before sentencing and before the plea were exhausted.
> When I say exhausted, when all of Mr. Cooper's
> desires, I thought I had run them all and was
> forwarding him signifying we did this with the
> government and here's your response. And it was –
> when it was exhausted and when I thought this is it,
> this is not going to get any better, that we will
> forward your office the signed plea, and that was
> sometime two months – two months later. Because at
> that point I was confident and through my discussions
> with Mr. Cooper that this was the end of the road and
> now we're going to enter the plea and then getting
> into a sentencing position.
>
> The Court: And just to be clear, to clarify when you
> of say "this was it," the "it" you are referring to is
> that you believed that you had gotten the best plea
> deal for Mr. Cooper from the government and could do
> no better?

>   Mr. O'Malley: I was confident that that was the best
>   plea that could have been gotten in Mr. Cooper's case.
>   And also, moreover, that Mr. Cooper was aware that
>   this was the best plea possible. That's why it was
>   protracted over a couple months before it got into the
>   inbox of the government.

1/27/20 Tr., at 22-23.

Mr. O'Malley summed up Defendant Cooper's conduct as follows:

> [He] was interested in two things. One was protracting the
> case as long as possible not to end up in a courtroom for
> sentencing, and the other one was to try and get the lowest
> sentence possible and me trying to -- I think had the best
> plea that he could have gotten and had taken it to its full
> conclusion, nonetheless Mr. Cooper was haranguing me
> constantly trying to see if we could find new ways of
> getting his 3553(a) issues through restitution lower. He
> had presented me all kinds of schemes where he could get
> restitution monies to influence the government that he's
> paying back the money. We tried to see if he could, that's
> why I spoke with his parents; see if we could put money in
> an escrow that we could come to the government and present
> them with his good faith savings of money to pay back the
> victims. None of this came – none of this came to be. So
> that's why it was stretched, because Mr. Cooper wanted some
> track record to show in a 3553 part three of a sentencing
> analysis that he was worthy and could get monies paid back
> to satisfy the government, that they might not take as
> strong a position as a guideline sentence.

Id., at 55-56.

At the January 27 hearing, Mr. O'Malley credibly explained how he and his client had discussed the charges, the underlying facts, and the discovery provided by the Government. To that end, Mr. O'Malley credibly testified that he reviewed the plea memo, the elements of the offense, and the specified unlawful activity relating to the money laundering, and that the

15

Defendant understood the elements.  Mr. O'Malley further credibly testified that he reviewed the plea colloquy questions with Defendant Cooper.

Mr. O'Malley's testimony is supported by Defendant Cooper's prior testimony at his plea colloquy.  At that hearing, this Court had asked pointed questions of Defendant Cooper relating to the charged offense.  At the time, Defendant Cooper testified under oath that Mr. O'Malley had discussed the Information, and the case in general, with him.  Mr. O'Malley's testimony is thus consistent with the answers given to the Court by Defendant Cooper at the plea hearing.

Defendant Cooper's November 2019 testimony to this Court that he had repeatedly lied at the plea hearing is itself a "lie of convenience" which this Court finds troubling.  It was obvious during Defendant Cooper's untruthful testimony at the November 2019 hearing that he had fabricated his answers in the service of one objective – to undo the plea.  Moreover, it is quite telling that at no point during this entire case did Defendant Cooper object to this Court either 1) hearing the matter, or 2)sentencing him – at no point, that is, until it became apparent to him at sentencing that this Court was skeptical that the Defendant possessed sufficient remorse and had fully accepted responsibility for his criminal conduct.

Defendant Cooper's testimony that he never would have pled guilty before this Court had he known of the Court's role in the civil judgment against him is equally unworthy of credence. The Court observed the Defendant's demeanor while testifying, and it was clear to the Court that this testimony was an excuse concocted well after the fact by the Defendant to facilitate withdrawal of his plea. Moreover, Defendant Cooper was clearly aware that this Court had entered the earlier judgment against him. Indeed, as set forth supra, he had submitted documents to this Court in the civil matter. Moreover, as Mr. O'Malley credibly testified, Mr. O'Malley had extensive discussions about having this Court take the plea, and the Court's Opinion was part of the discovery provided by the Government which Mr. O'Malley in turn supplied to Defendant Cooper.[6] See 1/27/20 Tr., at 45-50. The Defendant's testimony that, despite his active participation in the civil matter and the efforts of his counsel, he somehow remained unaware of this Court's Opinion was simply not believable.

Finally, Defendant Cooper's contention that he only pled guilty because he thought there was a good chance he would not

---

[6] Because the Court finds Mr. O'Malley's testimony credible that Defendant Cooper knew about this Court's prior Opinion as well as its Order, this testimony effectively answers the question previously raised by the Court regarding Defendant Cooper's prior awareness. See 11/13/19 Tr., at 86.

17

actually go to jail is not supported by either Mr. O'Malley's testimony or the record.

First, Mr. O'Malley credibly testified that he told "Mr. Cooper . . . to expect to go to jail because of his conduct." 1/27/20 Tr., at 59. Mr. O'Malley also credibly testified that he believed he had "also told him it's more likely that he's going to do a guideline sentence and maybe he might be able to get it down to around two years." Id. at 59.

Second, the Court clearly advised the Defendant during the plea colloquy that he would not be able to withdraw his plea on the grounds that Mr. O'Malley's predictions as to the Court's sentence proved inaccurate. Setting aside the fact that this Court has not yet sentenced Mr. Cooper, and his sentence (custodial or not) has not yet been determined, this Court finds Defendant's position that he was misled about the sentence he would face not credible.

**Conclusion**

Accordingly, for all of the foregoing reasons, Defendant Cooper's motion to withdraw his guilty plea is DENIED.

s/Renee Marie Bumb_____
RENEE MARIE BUMB
United States District Judge

Dated: March 2, 2020